# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KENNETH TIMMONS,** | : | **CIVIL NO. 1:17-CV-95** |
| **Petitioner** | : | **(Chief Judge Conner)** |
| v. | : | |
| **R.A. PERDUE,** | : | |
| **Respondent** | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by petitioner Kenneth Timmons ("Timmons"), an inmate currently confined at the Schuylkill Federal Correctional Institution, in Minersville, Pennsylvania ("FCI-Schuylkill"). (Doc. 1). Timmons contends that his due process rights were violated in the context of a disciplinary hearing held at the Fort Dix Federal Correctional Institution, in Joint Base MDL, New Jersey ("FCI-Fort Dix"). The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On August 11, 2015, Timmons was sentenced in the United States District Court for the Western District of Pennsylvania to a 90-month term of imprisonment for conspiracy to possess with intent to distribute cocaine base, and possession of a firearm by a convicted felon. (Doc. 1, at 1; USA v. Timmons, No. 2:13-cr-303 (W.D. Pa.)). His projected release date is July 8, 2020, via good conduct time. (Doc. 7-1, Ex. 1, Attach. B, Public Information Inmate Data).

In the instant petition, Timmons claims that his rights were violated during a disciplinary hearing held at FCI-Fort Dix, where he was found guilty of a code 108 violation for possession, manufacture, or introduction of a hazardous tool. (Doc. 1). Specifically, Timmons challenges the sufficiency of the evidence relied on by the discipline hearing officer ("DHO") to find him guilty of a code 108 violation. (Id. at 7). For relief, Timmons seeks dismissal of the incident report and restoration of his good conduct time. (Id. at 8).

There is no dispute that Timmons exhausted his administrative remedies prior to initiating this action. (Doc. 7, at 2 n.1; Doc. 8-1).

## II. Discussion

On April 20, 2016, Timmons was served with incident report number 2841499, charging him with a code 108 violation for "possession, manufacture, introduction, or loss of a hazardous tool." (Doc. 7-1, at 9, Incident Report). The incident is described as follows:

> On April 20, 2016, at approx. 3:00 p.m. while conducting a pat search on inmate Timmons, Kenneth, Reg No. 06555-068, in 5802 1st floor bathroom, I discovered a "white Blue-Tooth Headset device" in the possession of inmate Timmons. This "Blue-Tooth device["] is used on cellular phones as a more comfortable way to conduct phone calls without having the phone against the ear. This device [c]learly has a "Microphone" picture stamped on it. When inmate Timmons was questioned about the device he stated "yes that's mine, I got it of[f] another compound." The Operations Lt was noticed of this finding.

(Doc. 7-1, at 9, § 11).

On April 20, 2016, Lieutenant Plaja gave Timmons advanced written notice of the charges against him and an investigation ensued. (Doc. 7-1, at 10). During the investigation, Timmons was advised of his right to remain silent and he indicated

2

that he understood his rights. (Id.) Timmons stated that he was unaware that there was a microphone in the headphones, and that a staff member patted him down the day before the incident and returned the same headphones to him. (Id.)

On April 22, 2016, Timmons appeared before the Unit Discipline Committee ("UDC"). (Doc. 7-1, at 9). Due to the severity of the offense, the UDC referred the incident report to the DHO with a recommendation that sanctions be imposed. (Id.)

On April 22, 2016, a staff member informed Timmons of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Doc. 7-1, at 12, Inmate Rights at Discipline Hearing). Timmons was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 7-1, at 13, Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)). Timmons waived his right to have a staff member represent him and elected not to call any witnesses. (Id.)

On April 28, 2016, Timmons appeared for a hearing before DHO A. Boyce. (Doc. 7-1, at 7-8, DHO Report). During the April 28, 2016 hearing, the DHO confirmed that Timmons received advanced written notice of the charges on April 20, 2016, that he had been advised of his rights before the DHO on April 22, 2016, and that Timmons waived his right to a staff representative and did not request to call any witnesses. (Id. at 7). The DHO again advised Timmons of his rights, Timmons indicated that he understood them, and that he was ready to proceed with the hearing. (Id.) Regarding the charges, Timmons stated that the headphones were found during a cell search, and that the headphones were in his possession when he was transferred to FCI-Fort Dix. (Id.)

3

After consideration of the evidence, the DHO found that Timmons committed the prohibited act of possession, manufacture, or introduction of a hazardous tool. (Id. at 8). The DHO explained his findings as follows:

> This decision is based on the evidence provided before me, which is documented in the written report provided by the reporting employee. The employee documented, "On Apr 20, 2016 at approx.. 3:00 p.m. while conducting a pat search on inmate Timmons, Kenneth, Reg. No. 06555-068, in 5802 1st floor bathroom, I discovered a "white Blue-Tooth Headset Device" in the possession of inmate Timmons. This "Blue-Tooth devise [sic][") is used on cellular phones as a more comfortable way to conduct phone calls without having the phone against the ear. This device clearly has a "Microphone" picture stamped on it. When inmate Timmons was questioned about the device he stated, "Yes that's mine, I got it off another compound." The Operations Lt was noticed of this finding."
>
> The DHO took into consideration your statement at the hearing, specifically, He stated that they searched his cell and found them. He stated he transferred with them.
>
> The photographs of the cell phone ear buds corroborate the incident report.
>
> Based upon the evidence provided before me, your actions are consistent with a violation Code 108-Possession of a hazardous tool.

(Id. at 8, § V).

As such, the DHO sanctioned Timmons with forty (40) days disallowance of good conduct time, fifteen (15) days in disciplinary segregation, suspended, and e-mail and phone restriction for sixty (60) days. (Id.) The DHO documented his reasons for the sanctions given as follows:

> The action on the part of any inmate to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the past, inmates have used hazardous tools to affect escapes, and seriously injure other inmates and staff members. A cellular telephone ear buds falls under the classification of a

4

> hazardous tool, as they are used to plug into cell phones which can arrange for rendezvous for escapes, and used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff.
>
> Disciplinary Segregation, suspended, Disallowance of Good Conduct Time, loss of E-MAIL, and Telephone privileges are meant to demonstrate the seriousness of the offenses to you as well as everyone incarcerated at this facility.

(Id. at 8, § VII). Timmons was advised of his appeal rights at the conclusion of the hearing. (Id. at 8, § VIII).

Timmons' sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the

5

fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited

6

act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the matter *sub judice*, it is clear that Timmons was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Timmons declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position. At the conclusion of the hearing, Timmons received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Timmons was also notified of his right to appeal.

Since Timmons was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Timmons was guilty of the charge. The DHO relied on the reporting officer's incident report, the chain of custody log dated April 20, 2016, and two photographs

of the earbuds with a microphone. (Doc. 7-1, at 7-8). The DHO also considered Timmons' admission that "they searched his cell and found them", and "he transferred with them." (Doc. 7-1, at 7, § III, B). Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Timmons, except his self-serving denial of the prohibited act charged, the court finds that Timmons' due process rights were not violated by the determination of the DHO.

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*. Timmons was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).

8

H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2841499.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: April 25, 2017